IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANA L. RODRIGUEZ,

       Plaintiff,

v.                                       CIV 05-0115 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Diana Rodriguez has a tenth-grade education.  She worked from age twenty-five to thirty-three as a nurses' aide and janitor, and from age thirty-eight to forty-one in a laundry.  She was fired from her last position in 1995, when she injured her neck.  She did not seek work thereafter and filed for disability benefits instead.  Her first two applications were denied.  The matter before me concerns the application she filed in December 2000 for disability benefits.  The denial of her December 2000 disability application was remanded by the Appeals Council and subsequently consolidated with the application she filed in May 2003 for Supplemental Security Income.  *E.g., Administrative Record* ("*Record*") at 22, 82, 93, 102, 108, 454-56, 479-81.

A new Administrative Law Judge ("ALJ") took the matter on remand.  He found that Plaintiff had the residual functional capacity to perform a full range of light work through the date she was last insured for disability benefits.  For the period thereafter, he found that she has the residual functional capacity to perform a limited range of simple, unskilled, light work with certain limitations.  With the aid of the testimony from a vocational expert, he identified three such jobs

Plaintiff could perform  – small parts assembly, candy maker, and hand ornament maker.  *E.g., id.* at 28.  The Appeals Council declined review on December 6, 2004, thereby rendering the ALJ's decision final.  *Id.* at 10.

This matter is before the court on Plaintiff's motion to reverse or remand.  She raises two assignments of error directed to her mental capacity only.  *See Docs. 8, 9.*  Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  *See Docs. 3, 5.*   The entire record has been read and the relevant portions thereof carefully considered.  I find that Plaintiff's motion should be denied and the decision of the Commissioner affirmed.

## I.  Overview Of Mental Impairment Medical Evidence & ALJ Decisions

Although Plaintiff claimed she had "been depressed for a long time with themes of not being good enough, a loss of interest, worry, and suicidal ideation," the first record of a visit to any psychological professional occurred in January 2002, when she was referred by a vocational rehabilitation counselor.  *Record* at 210.  Plaintiff told psychologist Walter F. Journigan of the Guidance Center of Lea County, Inc., that her attorney had sent her to him "'to get my SSI.'"  *Id.* He interviewed and tested Plaintiff and found that she "was not imminently suicidal with gesture or intention but does admit to active suicidal thoughts currently."  *Id.*  He diagnosed her with somatoform disorder, dysthymic disorder, and dependent personality disorder and rated her GAF at 50.  *Id.* at 212.

His detailed report explained his diagnoses and provides in part that Plaintiff views herself in a "sick role," focuses on her physical symptoms to deal with marital and family stressors, and thus "get[s] her needs for attention, sympathy, and support met in a maladaptive fashion." *Id.* at

2

212-13.  She therefore "runs the risk of chronic unemployment and many unproductive years,"

and "will almost certainly need the intervention and counsel of a mental health professional if she

is to make significant changes in her life." *Id.* at 212-13.  Dr. Journigan noted that a diagnosis of

chronic depression was strongly supported and does occur with somatoform disorder in many

patients.  *Id.* at 213.

Dr. Journigan recommended that the mental health counselor "address the marital and

family conflicts first [because] she feels unhappy about life and resents her unpleasant home life."

*Id.* at 214.  He also recommended that the counselor monitor Plaintiff's potential for suicide,

though she "was not imminently dangerous at the time." *Id.*

In April 2002, Plaintiff started going to the Carlsbad Mental Health Association

(hereinafter "CMHA") for treatment at the request of her attorney, *see id.* at 195, 198, and

psychiatrist Dr. Babak Mirin oversaw Plaintiff's care,  *see e.g., id.* at 313.  There is no indication

that CMHA was aware of Dr. Journigan's assessment three months earlier.  The initial CMHA

evaluation diagnosed Plaintiff with Major Depressive Disorder, Recurrent, giving her a  GAF of

54.  *Id.* at 198-99.  As for suicide, the CMHA initial evaluation states that Plaintiff "presents

today with chronic, long term suicidal ideation with vague plan, but denies intent.  She denies any

homicidal ideation or past suicidal intent." *Id.* at 196-97.

Plaintiff had appointments at CMHA once in April, May, and July 2002.  Those records

indicate that her suicidal thoughts were passive and that she was feeling better with only mild

depression and anxiety.  *See id.* at 200, 201 (duplicated at 394), 203 (duplicated at 393).  In the

two months before the first hearing before ALJ David R. Wurm, Ms. Rodriguez had more

frequent appointments.  However, these records also showed that the depression was in partial

remission with medication and that Plaintiff was feeling better.  Her primary complaint was

chronic worry, especially over money because her mother-in-law had died and they lost the

support of her "check."  Plaintiff believed that once she received disability money, her worries

would cease.  *See id.* at 202 (duplicated at 392), 204-07, 208 (duplicated at 391).

After the October 11, 2002 hearing,  Plaintiff had an appointment in November 2002,

which again reported that her anxiety, depression, and irritability were low.  *See id.* at 390.  She

did not show for her next appointment scheduled in March 2003.  *See id.* at 389.  In May 2003,

she requested a refill of her medications, and did not show for her appointment in July.  *Id.* at 277,

388; *see also id.* at 414.

> On March 17, 2003, ALJ Wurm issued his opinion stating that Plaintiff

>> also suffers with depression.  She has undergone psychiatric
>> treatment, and takes prescribed medication (Exhibit B-7F).  There
>> is no evidence that these conditions have more than a minimal effect
>> on the claimant's ability to perform basic work-related activities,
>> and thus do not constitute severe impairments.

*Id.* at 246.  The exhibit to which he referred contains the CMHA records.  ALJ Wurm did not

mention Dr. Journigan's report.

To the Appeals Council, Plaintiff argued exclusively that the opinion should be reversed

because of Dr. Journigan's report and the ALJ's failure to consider it.  See id. at 259-60.  In July,

the Appeals Council agreed and remanded because ALJ Wurm:

>> did not adequately evaluate the psychological evaluation performed
>> by Walter F. Journigan, PhD. on January 29, 2002.  Dr. Journigan
>> diagnosed the claimant with a somatoform disorder and dysthymic
>> disorder and gave the claimant a generalized assessment functioning
>> score (GAF) of 50 (Exhibit 8F).  Further, Dr. Journigan indicated
>> that the claimant was at risk to abuse pain medications or
>> prescription drugs and another real concern is the claimants's

suicidal potential.  Further evaluation of this report is necessary.

*Id.* at 256.

After remand, consulting psychologist Carl Adams, PhD. evaluated Plaintiff.  He reported a GAF of 80, *id.* at 414, and on the "Psychiatric - Psychological Source Statement of Ability To Do Work-Related Activities" form found Plaintiff "not limited" in all areas, *id.* at 416-18.  His report further noted that Plaintiff told him she had been

> applying for disability benefits for the past eight years.  Ms. Rodriguez had retained services of an attorney, had gone to a hearing and they thought they had won, but she was denied.  She immediately filed another application and said she will continue to do so.  She did not appear depressed.

*Id.* at 411.

Dr. Mirin saw Plaintiff four times between August 2003 and February 2004.  These medical records again report that Plaintiff was feeling well until the February visit when she was anxious.  That is the last record of any actual visits to Dr. Mirin.  *See id.* at 273-76.  In April 2004, Dr. Mirin filled out a form entitled 'Mental Impairment Questionnaire" sent by, and apparently created by, Plaintiff's attorneys.  *See id.* at 313.  He assessed Plaintiff with a GAF of 60 to 65, *id.* at 313, and indicated mild functional limitations:  "restriction of activities of daily living," "difficulties in maintaining social functioning, and "deficiencies of concentration, persistence or pace," *id.* at 315.  Dr. Mirin also indicated: one or two "repeated episodes of decompensation within 12 month period, each of at least two weeks duration," her impairment "caused more than a minimal limitation of ability to do any basic work activity," and her impairment "would cause [her] to be absent from work . . . more than four days per month."  *Id.* at 315-16.

ALJ William F. Nail, Jr. took the matter after remand.  As did ALJ Wurm, ALJ Nail

concluded, practically verbatim, that  "The claimant also suffers with depression.  She has

undergone psychiatric treatment and takes prescribed medication (Exhibit B-7F) [the CMHA

records].  There is no evidence, however that these conditions have more than a minimal effect on

the claimant's ability to perform basic work-related activities.  Thus, they do not constitute severe

impairments."  *Id.* at 23.  ALJ Nail's other discussion relating to the psychological evidence

consisted of these statements:

> The claimant has taken Valium for several years, and has a drug-
> seeking behavior.  On March 14, 2000, her script was altered to
> read three refills instead of zero (Exhibit B-4F/12).  In a Health
> Profile, "drug seeker" was noted (Exhibit B-5F/1).  The
> psychologist [Dr. Journigan] also indicated that she was at risk to
> abuse pain medications or prescription drugs (Exhibit B-8F/6).
>
> * * * * *
>
> The Appeals Council specifically ordered further consideration of
> the claimant's mental condition.  It is noted that she has been
> variously described as a 'drug seeker' (Ex. B12F/5), and as over
> stating her physical dysfunction (Ex. B-F/4) [typographic error
> referring to page four of Dr. Journigan's report].  It is also
> interesting to note that she told Dr. Carl Adams (Ex. C-F/4) that
> "she has been applying for benefits for the past eight years . . . and
> that she will continue to do so."  Dr. Adams assessed a GAF of 80
> which denotes very mild limitations.  It is also noted the Dr. Mirin,
> a treating doctor, assessed functional limitations in the mild
> category (Ex. B13F/4).

*Id.* at 25-26.

This time, Plaintiff did not challenge ALJ Nail's mental capacity findings on appeal.

Instead, Plaintiff focused exclusively on findings regarding her alleged pain due to physical

problems.  *See id.* at 447-49.  The Appeals Council "considered the reasons you disagree with the

decision" and denied review, finding "that this information does not provide a basis for changing" the ALJ's decision. *Id.* at 10.

## II.  Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005); *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005); *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Grogan,* 399 F.3d at 1261; *Hackett,* 395 F.3d at 1172; *Hamlin,* 365 F.3d at 1214.  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record of if there is a mere scintilla of evidence supporting it."  *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Grogan,* 399 F.3d at 1262; *Hamlin,* 365 F.3d at 1214.  My assessment is based on a "meticulous" review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Grogan,* 399 F.3d at 1262; *Langley,* 373 F.3d at 1118; *Hamlin,* 365 F.3d at 1214.

## III.  Analysis

Although Plaintiff asserts two claims, she actually raises several arguments and a new issue in her reply. *See Doc. 11* at 3.  I agree that this matter should be denied in general for the reasons stated and authorities stated by the Commissioner in her response, which I incorporate herein by reference.  To that discussion, I add these observations.

Contrary to Plaintiff's assertion, ALJ Nail did not ignore the Appeals Council remand order.  As set forth above, he did consider Dr. Journigan's report, but found Plaintiff's mental condition was not "severe" at Step 2.  The placement of his discussion on the evidence is unusual because it followed his conclusion that Plaintiff's mental impairments were not "severe."  Nevertheless, I cannot conclude that he failed to consider the evidence the Appeals Council required.[1]

At Step 2 of the sequential analysis, the claimant bears the burden of showing, ***by medical factors alone,*** that his or her alleged mental impairment "significantly limits" a "basic work activity."[2]  If the claimant does not meet that showing, the ALJ can deny benefits for the asserted condition without continuing on to the next steps of the analysis.  *E.g., Langley,* 373 F.3d at 1123; *Williamson v. Barnhart,* 350 F.3d 1097, 1099-1100 (10th Cir. 2003); *Eden v. Barnhart,* 109 Fed. Appx. 311, 313-14 (10th Cir. 2004); *Cainglit v. Barnhart,* 85 Fed. Appx. 71, 73 (10th Cir. 2003); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1520a(d)(1), 404.1521(a).

None of the three psychological sources, Dr. Journigan, Dr. Mirin, or Dr. Adams, were of the opinion that Plaintiff was "significantly limited" in any "basis work activities" as defined by the regulation.  Only the PSS form specifically inquired into those defined areas, and Dr. Adams found Plaintiff "not limited."  Plaintiff's "treating" sources are in accord with his views.

---

[1]  Even if the ALJ failed to follow remand instructions, that fact is not remediable by this Court. *See e.g., Gabaldon v. Barnhart,* ___ F. Supp. 2d ___, 2005 WL 3027689 at *9 & n.9 (D.N.M. 2005) ("I do not have jurisdiction to consider Plaintiff's contentions regarding the ALJ's adherence to the Appeals Council's remand order.").

[2]  The regulations define mental "basic work activities" as:  "Understanding, carrying out, and remembering simple instructions;" "Use of judgment;" "Responding appropriately to supervision, co-workers and usual work situations;" and "Dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b)(3)-(6).

For example, Dr. Journigan indicated that Plaintiff "sees herself as physically disabled" and was under the misimpression that she was sent to him

> to document disability for social security purposes. It appeared that she wanted to be 'certified' so that she could receive disability monies and then her emotional problems would disappear. The idea of working seemed to be almost an afterthought to her.

*Record* at 213. Dr. Journigan advocated finding a way to motivate Plaintiff to start counseling to address these attitudes so that she could effectively work with vocational rehabilitation staff in locating a job. *Id.*

Furthermore, the records from the subsequent counseling sessions and drug therapy were successful in alleviating her depression. True, Dr. Mirin checked the portion of his form that stated Plaintiff had a condition that "caused more than a minimal limitation of ability to do any basic work activity." However, at that time he was not given a definition of "basic work activity" nor did he indicate a level of severity. As ALJ Nail noted, Dr. Mirin only found "mild" limitations in "functioning" on the portion of the form that allowed him to chose a severity level in the areas defined as daily living, social functioning and concentration, persistence, and pace.[3] Thus, Dr. Mirin's responses should not be read as indicating he equated "more than a minimal limitation" with "significant" limitations.

Plaintiff's GAF scores, the lowest of which was 50, do not conclusively establish the

---

[3]   Dr. Mirin's response to the "episodes of decompensation" question also did not negate his "mild" findings because of the way the phrase was defined. On that form, "episodes of decompensation" were defined as exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace . . . that would ordinarily require increased treatment or a less stressful situation." *Record* at 315.

requisite severity at Step 2,[4] because GAF scores can indicate problems entirely unrelated to the

ability to hold a job.[5]  Indeed, Dr. Journigan, himself indicated that Plaintiff's problems were with

her family relationships and recommended that therapy focus on those.

Plaintiff appears to argue that Dr. Journigan's "somatoform" diagnosis alone is sufficient

to meet her burden.  But the mere presence of a mental condition does not establish the requisite

Step 2 severity in the basic activities,[6] nor does simply having a prescription for and taking

medication,[7] nor does subjective testimony.[8]  I find no error in the ALJ's Step 2 findings.  *See also*

---

[4]  *See Lee v. Barnhart,* 117 Fed. Appx. 674 678 (10th Cir. 2004) ("Standing alone, a low GAF score [of 48] does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . . .  A GAF score of fifty or less, however, does suggest an inability to keep a job. . . .   In a case like this one, decided at step two, the GAF score should not have been ignored."); *see also Langley,* 373 F.3d at 1123 ("GAF score [of] 50, indicat[es] serious symptoms.").

[5]  *E.g., Zachary v. Barnhart,* 94 Fed. Appx. 817, 819 (10th Cir. 2004) ("A GAF of 45 indicates '[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning.' AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).  Dr. Mynatt's finding that Ms. Zachary's present level of functioning was 45 did not include any explanation for giving her that rating and did not indicate that Ms. Zachary was unable to work.  Ms. Zachary's GAF score of 45 may indicate problems not necessarily related to her ability to hold a job, *see id.,* and therefore standing alone, without any further narrative explanation, this rating does not support an impairment seriously interfering with her ability to work."); *Cainglit,* 85 Fed. Appx. at 75 ("A GAF score of 41-50 indicates '[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning,' while a GAF score of 31-40 indicates '[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work, school, family relations, judgment, thinking or mood.' . . .   A GAF score of 39-45 thus may indicate problems that do not necessarily relate to one's ability to work. . . .   In this case neither Dr. Ball nor the MHSSO counselors stated that Ms. Cainglit's depression would interfere with her ability to work. . . .   Rather, they noted problems with her family and social relationships. . . .   In the absence of any evidence indicating that Dr. Ball or the MHSSO assigned these GAF scores because they perceived an impairment in Ms. Cainglit's ability to work, the scores, standing alone, do not establish an impairment seriously interfering with Ms. Cainglit's ability to perform basic work activities.").

[6]  *E.g., Williamson,* 350 F.3d at 1100; *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997); *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).

[7]  *See Hawkins v. Chater,* 113 F.3d 1162, 1164-65 (10th Cir. 1997) (Claimant's treating physicians prescribed antidepressants but no objective medical evidence supported that diagnosis; report of consulting examining source finding claimant did not suffer from a severe mental impairment, "coupled

*Farr v. Barnhart,* CIV 04-1272 KBM (*Doc. 13* at 4-8).

In a related argument, Plaintiff contends that the ALJ was required to give controlling weight to Dr. Mirin's conclusion that Plaintiff would miss more than four days of work per month and submit that limitation to the vocational expert.  However, since the mental impairments were rejected at Step 2, there was no need to do so.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 8)* is DENIED, and the decision of the Commissioner is affirmed.  A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.

---

with the absence of any objective medical findings regarding claimant's alleged depression, justifies the ALJ's decision to discredit claimant's testimony and the fact of her use of prescribed anti-depressants.").

[8] *E.g., Moore v. Barnhart,* 114 Fed. Appx. 983, 990 (10th Cir. 2004) ("Plaintiff's reference to other statements she made . . . likewise do not establish a significant mental impairment of disabling proportions.").